

# THE ATTORNEY GENERAL
## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

December 1, 1971

Honorable Grover E. Murray
President
Texas Tech University
P. O. Box 4349
Lubbock, Texas 79409

Dear Dr. Murray:

Opinion No. M-1007

Re: Authority to establish a
"Central Services Account"
for Texas Tech University
and Texas Tech University
School of Medicine.

Your request for an opinion on the above subject matter asks the following question:

"Whether the authority granted by Article IV, Section 36, Senate Bill No. 7, 62nd Legislature, First Called Session, 1971, to the Board of Regents of Texas Tech University and Texas Tech University School of Medicine to establish a 'Central Services Account', as well as the authority granted to Comptroller of Public Accounts to pay vouchers submitted by such institutions for non-instructional salaries, maintenance, equipment or travel incident to the administration, supervision, and common operations and support of the institutions conflicts with Article 4413(32) V.A.C.S., commonly known as the 'Interagency Cooperation Act?'"

Section 36 of Article IV of Senate Bill 11, Acts 62nd Legislature, R.S. 1971 (as amended by S.B. 7, 1st C.S., 62nd Leg., 1971) provides:

"Sec. 36. TEXAS TECH UNIVERSITY AND TEXAS TECH UNIVERSITY SCHOOL OF MEDICINE CENTRAL SERVICES ACCOUNT. Out of funds appropriated in this Article, the Board of Regents of Texas Tech University, acting in its capacity as governing board of each separate institution, may employ persons to serve both institutions jointly and pay their salaries in whole or in part from the appropriations made herein to either institution. Said Board is

-4910-

authorized to establish the 'Texas Tech University and Texas Tech University School of Medicine Central Services Account' from which may be paid salaries and expenses for the administration, supervision and operation of the institutions, in such proportion as may be determined by said Board and to require the institutions including any other institution which may be placed under the adminis-tration of the Board by law to pay into this account from any local fees or funds or from moneys appro-priated by the Legislature, their proportionate share as determined by the Board of Regents for the expense and administration of each institution. The Comptroller of Public Accounts is authorized to set up an account with the above caption and to deposit in said account funds to the amount authorized by said Board of Regents and the ex-ecutive heads of the respective institutions for non-instructional salaries and general operating expenses. The Comptroller is authorized to draw warrants against this account based on vouchers submitted by Texas Tech University and Texas Tech University School of Medicine in payment of salaries, maintenance, equipment or travel incident to the administration, supervision, and common operations and support of the institutions. The State Treasurer is hereby authorized and directed to pay warrants so issued against any funds except instructional salaries appropriated by the Legislature to each institution.

"Appropriations to either of the institutions may also be used to reimburse any revolving fund operated for the benefit of either of the institu-tions such as a motor pool for managing automotive vehicles authorized by the Act, an office supply or laboratory supply center or any other operation of a similar nature established by authority of the Board of Regents. Travel expense incurred by a person employed by one institution in connection with service to the other institution may be reimbursed by the institution for which such services are performed or proportionately if both institutions are involved." (at p. IV-80-81).

A general appropriation act may contain riders which detail, limit or restrict the use of funds or otherwise insure

that the money appropriated is spent for the required purposes for which the money is appropriated. However, an appropriation act cannot modify, amend or repeal existing legislation. Attorney General's Opinions M-942 (1971), M-249 (1968) and V-1254 (1951), and authorities cited in these opinions.

Section 110.01 of House Bill 1657, Acts 62nd Leg., R.S. 1971, Ch. 1024 at page 3072, 3267, provides:

"Texas Tech University School of Medicine at Lubbock is a separate institution and not a department, school, or branch of Texas Tech University but is under the direction, manage- ment, and control of the Texas Tech University Board of Regents."

Section 110.02 provides:

"The board of regents has the same powers of direction, management, and control over the medical school as they exercise over Texas Tech University. However, the board shall act separ- ately and independently on all matters affecting the medical school as a separate institution."

Section 110.03 provides:

"The board may make rules and regulations for the direction, control, and management of Texas Tech University School of Medicine as necessary for the school to be a medical school of the first class."

It is noted that under the foregoing provisions both Texas Tech University and Texas Tech University School of Medicine at Lubbock are under the direction, management and control of the Texas Tech University Board of Regents, managed as separate in- stitutions under the same board. There is no provision in House Bill 1657, supra, that prohibits the Legislature from appropriating moneys to the Board of Regents for the purposes set out in Section 36 of Article IV of the current General Appropriation Act, nor does the fact that the school of medicine is to be managed as a separate institution prohibit the Legislature from establishing a central services account for the reason that such account merely details the use the funds appropriated may be spent by the governing

board to whom the appropriation is made, and therefore falls within the legitimate purposes of riders to appropriation bills. See authorities in Attorney General's Opinions M-942, M-249 and V-1254, supra.

Your question also refers to the provisions of Article 4413(32), Vernon's Civil Statutes, commonly known as the Interagency Cooperation Act, which authorizes various agencies of the State to contract with one another. Section 2 of Article 4413(32) defines "agency" as follows:

"When used in this Act the word 'agency' includes department, board, bureau, commission, court, office, authority, council, institution, university, college, and any service or part of a State institution of higher education."

Section 3 provides in part:

"Any state agency may enter into and perform a written agreement or contract with other agencies of the state for furnishing necessary and authorized special or technical services, including the services of employees, the services of materials, or the services of equipment. . . ."

Since Texas Tech University and Texas Tech University School of Medicine are to be managed as separate institutions, each institution could be regarded as an agency within the definition of Section 2 of Article 4413(32), Vernon's Civil Statutes. However, this fact does not require the governing board of such institutions to contract with itself. It is therefore our opinion that Article 4413(32) has no application to your question.

You are accordingly advised that Section 36 of Article IV of Senate Bill 11, Acts 62nd Leg., R.S. 1971 (as amended by S.B. 7, 1st C.S., 62nd Leg., 1971) is valid and the Board of Regents is authorized to establish the Central Services Account provided therein and to expend moneys in accordance with its provisions.

## SUMMARY

Section 36 of Article IV of Senate Bill 11, Acts 62nd Leg., R.S. 1971 (as amended by S.B. 7, 1st C.S., 62nd Leg., 1971) authorizing the establishment of a Central Services Account for Texas Tech University and Texas Tech University School of Medicine is valid.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John Reeves
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
James Quick
James Maxwell
Wm. J. Craig
Sig Aronson

SAM McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant